IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

BERNICE McGEE, )

    PLAINTIFF, )

VS. ) CV97-H-1825-NE

OSTEONICS CORPORATION, )

    DEFENDANT. )

**MEMORANDUM OF DECISION**

Defendant Osteonics Corporation ("Osteonics") filed a motion for summary judgment on July 15, 1998 seeking judgment in its favor as to all of plaintiff's claims.[1] Osteonics' motion for summary judgment was deemed submitted, without oral argument, to the court for decision as of August 4, 1998. See July 26, 1998 Order. In the interim the court held a pre-trial conference on July 28, 1998, during which plaintiff's counsel acknowledged that plaintiff would pursue only the negligence claim set forth in Count II of the complaint and voluntarily dismissed Counts I, III, IV, V, VI and VII. See July 28, 1998 Pre-Trial Order. Plaintiff's counsel stated that plaintiff would not oppose the motion for summary judgment by a letter dated July 31, 1998 and filed no brief or evidence in opposition to the motion for summary judgment.

---

[1] Along with the motion for summary judgment, defendant filed a supporting brief and evidence in support of the motion including: plaintiff's deposition; excerpts from Dr. Hofammann's deposition; pleadings from McGee v. Wal-Mart, 94-1-1298-NE; and some of plaintiff's medical records.

## I. BACKGROUND

Plaintiff initiated this action on July 18, 1997 asserting numerous legal claims arising out of the implantation of a right hip prosthesis in July of 1995.[2] The following facts are undisputed and largely taken from defendant's evidentiary submissions. Osteonics manufactured the hip prosthesis implanted in plaintiff during the July 1995 procedure. According to Dr. Dabney Hofammann, plaintiff's treating physician, no complications emerged during the surgery. See Hofammann depo. 21; McGee depo. 26-27; Medical Rec. 0125-0130. Dr. Hofammann observed "nothing out of the ordinary" in relation to the Osteonics device. See Dr. Hofammann depo. at 22.

During the next six months plaintiff suffered two painful dislocations of her right hip. The first dislocation occurred after plaintiff completed two weeks of rehabilitation. See Medical Rec. 0002. According to plaintiff, she was attempting to "swing" her right leg onto the bed when the dislocation occurred. See McGee depo. 70, 110-11. At the time plaintiff was seen concerning the first dislocation, the attending physician noted that plaintiff's obesity, weighing 308 pounds, "was a problem

---

[2] In the original complaint, plaintiff asserted the following claims: Alabama's Extended Manufacturers Doctrine ("AEMLD") (Count I); negligence (Count II); breach of warranties (Count III), intentional and negligent infliction of emotional distress (Count IV), reckless misrepresentation (Count V), and breach of warranty/Magnusom-Moss (Count VI). At this time the only remaining claim to be considered is the negligence claim in Count II.

which contributed to this dislocation."[3] See Medical Rec. 0002. Following the dislocation, plaintiff began feeling as if her hip was shifting or sliding. See McGee depo. 72; Medical Rec. 0098.

In January of 1996, plaintiff's right hip dislocated a second time. Dr. Hofammann testified that the dislocation occurred due to the earlier dislocation stretching out the soft tissue and due to the amount of scar tissue. See Hofammann depo. 30-31; Dr. Hofammann also testified that plaintiff's excess weight contributed to the dislocations. Id. at 31.

Immediately following the second dislocation, in January of 1996, plaintiff underwent a second hip replacement to implant a different sized prosthesis.[4] See Dr. Hofammann depo. 28-29. Dr. Hofammann inspected the original Osteonics prosthesis and observed nothing wrong with the prosthesis at the time of removal. See Hofammann depo. 30. After a period of rehabilitation resulting in her discharge on February 18, 1996, plaintiff experienced no further problems with her right hip. See McGee depo. at 77; Medical Rec. 1016.

Prior to plaintiff's first surgery, Dr. Hofammann warned plaintiff that her excessive weight of over 300 pounds, created a risk in that it could cause the hip to dislocate or not last as long. See McGee depo. 10, 58-59, 90; Hofammann depo. 14-15.

---

[3] Following the first dislocation, plaintiff was taken to Huntsville Hospital where plaintiff's hip was maneuvered back into place without surgery. See McGee depo. 71-72; Medical Rec. 0002 & 0015.

[4] Osteonics also manufactured the second prosthesis. See Med. Record 0117.

3

According to plaintiff, Dr. Hofammann "bugged" her "all the time" about losing weight. Id. At 58. Plaintiff was unable to lose any weight before or after the first surgery. See McGee depo. 59, 89-90.

During her rehabilitation following the first hip surgery, plaintiff was instructed concerning the importance of using a hip abduction pillow between her legs while in bed to prevent any excessive stress on the repaired hip due to crossing of her legs. See McGee depo. 66. Plaintiff was also informed of the importance of wearing a hip brace whenever she placed weight on her hip. Id. at 65. However, plaintiff's medical records indicate that plaintiff failed to consistently use the pillow and brace as instructed. See Med. Records 0097-0098.

## II. LEGAL ANALYSIS

Defendant Osteonics seeks summary judgment in its favor as to plaintiff's remaining negligence claim. Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or

filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

Defendant seeks summary judgment in this case by attempting to _affirmatively_ show the absence of evidence in the record to support a judgment for the plaintiff. This method requires defendant to point out to the district court that there is an absence of evidence to support plaintiff's case. Fitzpatrick, 2 F.3d at 1115-16. If defendant meets its initial burden by using this method, plaintiff may either point out to the court record evidence, overlooked or ignored by the defendant, sufficient to withstand a directed verdict, or plaintiff may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, plaintiff can no longer rest on mere allegations, but must set forth evidence of specific facts.

Lewis v. Casey, 518 U.S. 343 (1996). In this case, plaintiff has failed to point out any overlooked evidence and has submitted no additional evidence.

Defendant properly observes that plaintiff made no allegations of any harm resulting from the Osteonics prosthesis implanted in January of 1996. Therefore, plaintiff's claim relates only to the Osteonics prosthesis implanted in July of 1995.

Plaintiff never saw the Osteonics prosthesis implanted in July of 1995 and has no personal knowledge concerning any defect or flaw in the prosthesis. See McGee depo. 88. Furthermore, the treating physician, Dr. Hofammann, testified that he saw nothing wrong with the original prosthesis, either at the time of implantation in July of 1995 or at the time of its removal and replacement in January of 1996. See Hofammann depo. 22 & 30. Plaintiff has offered no expert testimony to demonstrate any defect in the prosthesis. Thus, based on the record before the court there is a total absence of any evidence by plaintiff that Osteonics breached a duty by a failure to use reasonable care in its manufacturing of the hip prosthesis. Plaintiff has failed to present sufficient evidence to support a finding of negligence by defendant Osteonics. Therefore, the court concludes that there remain no material issue of fact in this case.

Based on the foregoing, the motion for summary judgment by defendant Osteonics is due to be granted. A separate order will be entered.

DONE this ___10th___ day of August, 1998.

                                                      SENIOR UNITED STATES DISTRICT JUDGE